E-FILED
Tuesday, 24 August, 2021  03:58:00 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| DEANDRA SNYDER, | ) | |
| Plaintiff, | ) | |
| | ) | **Jury Demand** |
| v. | ) | |
| | ) | No. |
| ARCHER-DANIELS-MIDLAND COMPANY, and | ) | |
| VANTAGE CORN PROCESSORS, LLC, | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Deandra Snyder ("Plaintiff"), through her attorneys, The Blanchard Law Group, P.C. and The Wood Law Office, LLC, sets forth the following as her Complaint against Defendants Archer-Daniels-Midland Company and its wholly owned subsidiary Vantage Corn Processors, LLC (Defendants):

## NATURE OF THE ACTION

1.      Plaintiff Deandra Snyder was a utility worker for Defendants Archer-Daniels-Midland Company ("ADM") and Vantage Corn Processors, LLC  ("Vantage") and worked in a facility operated by its wholly owned subsidiary Vantage Corn Processors, LLC.

2.      In 2020, Plaintiff was a victim of domestic violence and as result thereof required ongoing medical treatment. Defendants denied Plaintiff VESSA and FMLA leaves to attend her medical treatments despite submitting proper medical records to Human Resources for each absence. Plaintiff was given attendance points instead of acknowledging these absences as VESSSA and/or FMLA leaves.

3.      Additionally, beginning in approximately February 2020, stemming from events of her domestic abuse, Plaintiff was subjected to sexual harassment from her co-workers.

1

Although Plaintiff made complaints about the harassment to Human Resources several times, Defendants failed to meaningfully investigate and protect the Plaintiff from sexual harassment. The co-workers who sexually harassed Plaintiff were not adequately disciplined and were allowed to continue to work with Plaintiff.

4.      Beginning on approximately April 2020, Plaintiff observed several health and safety violations at her workplace. Plaintiff reported these issues to her supervisors and the union.

5.      On June 30, 2020, Plaintiff passed out at work due to extreme heat at the plant. Plaintiff was later diagnosed with a blood clot and was advised by her doctor to take a leave off work.  Defendants were aware of Plaintiff's workplace injury.

6.      When Plaintiff returned to work on July 13, 2020, Plaintiff reported unsanitary conditions in the women's bathroom in the Yeast Department as another example of the harassment and unlawful conduct she was forced to endure at work.  A male co-worker had vandalized the bathroom. Defendants purportedly investigated the incident, and claims it concluded that it was Plaintiff who vandalized the bathroom, but Defendants never questioned Plaintiff about evidence it gathered regarding who was responsible for the incident.

7.      On July 21, 2020, Plaintiff was terminated without the benefit of any progressive discipline, claiming she was responsible for the bathroom incident. But, in reality, Defendants terminated Plaintiff based on her gender (female), to interfere with her continued exercise of rights under FMLA and in retaliation for her statutorily protected activity.

## JURISDICTION, PARTIES, AND VENUE

8.      This Court has jurisdiction over all claims in Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1367(a), 42 U.S.C. §2000e-5(f)(3), and 29 U.C.S. § 2617.

9. Plaintiff is a female and has been a resident of the Central District of Illinois at all relevant times. At the time of her employment with Defendants, Plaintiff resided in Decatur, Illinois, within the Urbana Division of this judicial district.

10. Plaintiff worked in ADM's Peoria Plant located in 1 Edmund St., Peoria, IL 61602.

11. Defendant Archer-Daniels-Midland Company, also known as ADM, is a multinational food processing and commodities trading corporation with its North American headquarters located at 4666 Faries Parkway Decatur, Illinois 62526, within the Urbana Division of this judicial district.

12. Defendant Vantage Corn Processors, LLC, a wholly owned subsidiary of ADM, is a chemical manufacturing company with its headquarters located at 4666 Faries Parkway Decatur, Illinois 62526, within the Urbana Division of this judicial district.

13. At all relevant times, each Defendant was an "employer" of Plaintiff as that term is used in the Illinois Human Rights Act, 775 ILCS 5/1 *et seq.*, Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Family and Medical Leave Act, 29 U.S.C. § 2601, the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*, the Illinois Whistleblower Protection Act, 740 ILCS 174, and Illinois common law.

14. Venue in the United States District Court for the Central District of Illinois, Urbana Division, is appropriate pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(3).

## **FACTUAL ALLEGATIONS**

**Background**

15. Plaintiff began her employment with Defendants on approximately January 21, 2020 as a Mill Utility Worker.

3

16.     Plaintiff reported directly to Former Production Superintendent Dennis Buccheit, who reported to Plant Supervisor Mark Reznik.

17.     Plaintiff's job functions included taking samples, conducting inspections, and cleaning.

18.     As a Utility Worker for Defendants, Plaintiff was subject to a collective bargaining agreement between Defendant ADM and the United Steelworkers Union Local No. 7-662 ("the Union").

**Plaintiff Was Denied VESSA And FMLA Leaves**

19.     On approximately February 6, 2020, before Plaintiff's shift started for that day, Plaintiff was assaulted by her boyfriend at the time at the parking lot of the Peoria ethanol plant. This incident was seen by her co-workers.

20.     As a result of the attack, Plaintiff had to take a personal day off to report the domestic violence to the police.  Due to the continuing threat to Plaintiff, the Decatur Police recommended that she remain in Decatur until February 7, 2020.

21.     On February 7, 2020, Plaintiff asked Terry Poulin, then a secretary and Human Resources Generalist for Defendant ADM, if she could take a leave explaining her situation.  Ms. Poulin denied Plaintiff's request and told that Plaintiff would be receiving an attendance point for that absence.

22.     When Plaintiff returned to work on February 10, 2020, she was called into Human Resources by Ms. Poulin and Rich Willis, a Labor Relations Representative and Human Resources Manager for Defendant ADM, to discuss the domestic incident on February 6. Plaintiff was told at that meeting that she was being given attendance points for her absence on February 7.

4

23.     During the February 10 meeting, Plaintiff explained to Mr. Willis and Ms. Poulin that she still feared for her life, felt unsafe at work, and that she would need to file for a protection order against her aggressor.  Plaintiff was eventually allowed by Mr. Willis to leave work, but only for a few hours to obtain the protection order.

24.     As a result of the attack, Plaintiff began to experience panic episodes.  Plaintiff consulted a doctor on February 12, 2020 for this symptom.  Plaintiff was then diagnosed with post-traumatic stress disorder (PTSD) and depression.

25.     On February 12, 2020, Plaintiff called Mr. Willis to tell him of the doctor's diagnosis and that she was advised by the doctor not to work during panic episodes.

26.     On February 13, 2020, upon the advice of Mr. Willis, Plaintiff filed a short-term disability leave request so as not to incur more absence points and submitted her application with accompanying medical records.  However, on February 20, 2020 Plaintiff's short-term disability claim was denied by Defendant ADM's third-party benefits administrator, Hartford.

27.     On February 20, 2020, Plaintiff filed for FMLA to go to a doctor's appointment. Mr. Willis told her that she would still be pointed for attendance for that absence.  Plaintiff still went to her doctor and her doctor faxed the FMLA papers to Human Resources.

**Plaintiff Experienced Sexual Harassment And Discrimination**

28.     On February 28, 2020, Plaintiff learned that her aggressor continued to malign her by spreading malicious, salacious, and false sexual, gender-based rumors about her to Mr. Willis, her co-worker Marcus White, Mill Utility Worker, and Steven Wilcox, an Alcohol Loadout Worker.  Mr. White, Mr. Wilcox, and Terry Poulin spread these false rumors to other workers in the plant and to people outside it. Plaintiff's aggressor also was friends with one of Mr. Willis' acquaintances and, with the acquaintance, called Mr. Willis and encouraged him to fire Plaintiff.

29.     On March 4, 2020, Plaintiff went to Mr. Willis to report the sexual harassment from Mr. White and Mr. Mack.  Rather than investigate her concerns consistent with Defendant ADM's policies that also applied to all Vantage Corn Processor employees, Mr. Willis then told Plaintiff that he personally knows Mr. Mack and that would take care of it.

30.     On March 12, 2020, Plaintiff was assigned to work on the same shift as Mr. White (who had already received a written reprimand for harassing Plaintiff on approximately March 5, 2020).  Also on March 12, after her shift, Plaintiff informed ADM's Human Resources Mr. Willis that she did not want to work with Mr. White because he had been harassing her. When Plaintiff reported this again to Mr. Willis at the end of her shift, she was told by Mr. Willis that there was nothing that they could do and that she had to work with Mr. White.

31.     On March 15, 2020, Plaintiff filed a grievance report with the Union for Defendants' conduct in allowing a hostile work environment to persist and for the failure to meaningfully investigate and address her complaints against Mr. White (Grievance no. 031520-DS).

32.     On March 16, 2020, Plaintiff's shift was changed so that instead of working on the B-Shift (the overnight shift from 7:00 p.m. – 7:00 a.m. shift), she was immediately required to start working the A-Shift (the day shift from 7:00 a.m. – 7:00 p.m.).

33.     On March 25, 2020, Plaintiff worked the day shift and it was clear Defendants were frustrated by having to address Plaintiff's sexual harassment complaint.  Plaintiff's supervisor cussed at her about having to move shifts.  Later that day, Plaintiff was called to a meeting at the Human Resources office with Mr. Willis, Ms. Poulin, and Mr. Buccheit to discuss moving shifts.  During the meeting Toni Smear, a union representative, attended but did not speak up to represent Plaintiff during a discussion about changing Plaintiff's shifts.  Plaintiff

explained her rights under VESSA and requested a two-week notice before moving her shift again.  Mr. Willis refused to provide the notice Plaintiff requested.

34.     Plaintiff was called to another meeting with Human Resources and was told by Ms. Poulin and Mr. Reznik that she was being moved from the B-Shift (the overnight shift from 7:00 p.m. – 7:00 a.m. shift) to the A-Shift (the day shift from 7:00 a.m. – 7:00 p.m.) effective on April 12, 2020.  However, despite knowing of Plaintiff's complaints and grievance report, she was still placed on the same work shift with Mr. White several times prior to her shift being moved.

35.     On March 30, 2020, Plaintiff was again deliberately made to work with Mr. White.  On that day, employees Stacy Murphy and Duane Connet overheard Mr. Buccheit tell Ms. Poulin that "she (Plaintiff) won't like working with him, watch how she likes this."  The employees reported Mr. Buccheit's comment to Local 7-662 Union President Mark York.

36.     On April 5, 2020, Plaintiff was again assigned to work with Mr. White, even though Plaintiff had been told Mr. White had temporarily been assigned to day shifts to avoid having to work with Plaintiff.  Plaintiff complained to Mr. Buccheit and Shift Supervisor James Lock about the unannounced shift change of Mr. White.  Plaintiff also spoke with Ms. Poulin to remind her that Mr. Reznik assured her that her shift would not change to days until April 12.  Ms. Poulin admitted that is what should have happened. Then, without explanation Mr. Reznik had Plaintiff escorted out of the plant by security.  Plaintiff asked for a union representative as she was being escorted out but was denied representation.

37.     Plaintiff was not allowed to work the remainder of the day on April 5, but Mr. White was allowed to work and complete his shift for that day.  In placing the Plaintiff in a

hostile work environment with a known sexual harasser which could possibly trigger a panic attack, Defendants disregarded any concern for Plaintiff's mental health and safety.

38.     Immediately after being escorted out, Plaintiff (through her Union) filed several grievance reports: (1) Grievance No. 040520-DS/USW(1) for illegal targeted harassment and for failure of informing her of a schedule change that affected her in violation of Article II, Section 2.01 of The Agreement; (2) Grievance No. 040520-DS/USW(3) and 040520-DS/USW(4) both for violations of State and Federal guidelines in reference to scheduling changes during the coronavirus pandemic and the violation of long standing past practice; and (3) Grievance No. 040520-DS/USW(5) for discrimination by personally informing an employee of a schedule change and not informing other affected employees.  Plaintiff's Union subsequently filed other grievances on her behalf.

39.     On April 8, 2020, Plaintiff filed a Charge of Discrimination at the Illinois Department of Human Rights against her employer alleging discrimination and harassment on the basis of sex/gender for creating a hostile work environment and failure to make a reasonable accommodation and retaliation (IDHR Charge No. 2020-SF-2583).  Defendants learned of Plaintiff's IDHR Charge before her employment ended.

40.     On approximately April 8, 2020, Plaintiff filed a VESSA complaint against ADM because she was denied leave available to her under VESSA to attend doctor appointments even though Human Resources was well aware that she is a victim of domestic violence who was seeking medical attention and psychological counseling related to the domestic violence incident. (VESSA Complaint No. 2020-VS-292).  Defendants learned of Plaintiff's VESSA complaint before her employment ended.

41.     On April 10, 2020, Plaintiff was called into a meeting with Mr. Reznik and Mr. Willis where she was scolded for failing to comply with her new shift schedule.  Mr. Reznik told Plaintiff that he did not know about VESSA, did not care about it and did not need to explain the reason for escorting her out.

**Plaintiff's Workplace Injuries And Complaint Of Unsafe Working Conditions**

42.     Beginning on April 13, 2020, Plaintiff had to quarantine after being exposed to Covid-19 per CDC guidelines.  Plaintiff informed Ms. Poulin that she would need FMLA leave to do so.

43.     On April 19, 2020, Plaintiff called ADM's leave of absence administrator (Hartford), who initially disclaimed any knowledge about Plaintiff's VESSA rights or leave she was entitled to under that law.  Later during the call, however, Plaintiff confirmed Defendants were aware of Plaintiff's VESSA claim.

44.     On April 24, 2020, before the full two weeks of COVID-19 quarantine was completed, Plaintiff was required by Mr. Willis to return on April 25, 2020.

45.     When Plaintiff returned to work on April 25, 2020, she observed that ADM was not following CDC protocols for Covid-19.  Plaintiff was forced to work with no social distancing with another co-worker.

46.     On April 26, 2020, Plaintiff was instructed by Shift Supervisor/Foreman Nino Menchaca to "dump the dumpster" - which was reported as unsafe by another worker (Stacy Stevens) the day prior.  Plaintiff told Mr. Menchaca that she did not have forklift training for the dumpster, but Mr. Menchaca insisted that Plaintiff dump the dumpster and threatened her with discipline if she failed to comply.

47.     In refusing to comply, Plaintiff was refusing to engage in conduct which she reasonably believed to be unlawful (operating a forklift at work without proper training).

48.     On April 29, 2021, Ms. Murphy called Plaintiff to tell her that she showed Mr. Menchaca the unsafe dumpster and that he told her to still use the unsafe dumpster.

49.     On May 1, 2020, Plaintiff reported the unsafe dumpster to Gus Mason, Safety Union Representative.

50.     On May 5, 2020, Plaintiff was called to Human Resources by Mr. Willis for discipline for refusing to dump the dumpster.  Plaintiff was represented by union representative Ty Taylor during this meeting.  Plaintiff explained to Mr. Willis that she reported the unsafe dumpster to Mr. Mason.

51.     Supervisor Curt Burrell ordered a new dumpster as a result of Plaintiff's reporting and told her that she should not have been threatened to be fired for reporting that the dumpster was unsafe.

52.     On June 15, 2020, Plaintiff and her co-workers hosed down hot mash leaking from pipes on first floor of mill/yeast department and the from the higher floors.  "Hot mash" is a boiling substance akin to scalding hot thick liquid (akin to grits); during a leak, pursuant to safety policies, plant operations are to cease when a leak occurs in order to comply with workplace safety regulation under OSHA.  Despite the hazardous conditions, Mr. Menchaca did not take the plant down to stop the hot mash leak.  Despite those safety policies, Mr. Menchaca instructed Plaintiff and other workers to hose down the hot mash throughout the night shift, putting them in danger.  Plaintiff was covered in hot mash while hosing down the area.

53.     On June 29, 2020, Plaintiff was exposed to extreme heat while working causing her to pass out.  Plaintiff was left on the plant floor with no one assisting her nor verifying her

10

safety on her radio. When Plaintiff gained consciousness, she left early to go home.  Plaintiff had

to go to the hospital where she was diagnosed with a blood clot in her neck. From July 1 until

July 12, 2020, Plaintiff had to take a sick leave for the blood clot and was advised by her doctor

that she should be on normal/light duty.

54.     Plaintiff called Human Resources to inform them that she would be off from work

and to advise them of her of her medical condition; however, Mr. Menchaca informed other

employees that her absence was a no-call, no-show.

55.     When Plaintiff returned to work on July 13, 2020, she found that the "women

only" sign on the women's restroom in the yeast department was removed and upon inspection

inside she noticed that it was vandalized with feces on the toilet.  She cleaned up the bathroom

and reported this incident to Mr. Buccheit and her Union president.  Plaintiff had previously

reported safety issues with this bathroom to Mr. Buccheit and other supervisors beginning in

February 2020 (e.g., unsanitary conditions and improper locking mechanism on the door), but

those remained unresolved.

56.     After her shift that day, Plaintiff received messages from co-workers saying that

she was going to be fired for a prank in which a tampon covered in ketchup was placed on the

toilet seat.  A male employee (who admitted to using the women's restroom and repeatedly a

spreading his feces all over the restroom) reported this prank.

57.     ADM conducted a three-day investigation into the incident and told Plaintiff not

to come to work during the investigation.  On approximately July 17, 2020, Defendants' Human

Resources personnel spoke with Plaintiff about the ongoing safety issues with the bathroom,

including the absence of locks.  When Plaintiff was questioned, she told Mr. Willis and Ms.

11

Poulin that she did not know who had done the prank.  She also told Human Resources that she had left that bathroom clean and had taken pictures of the clean bathroom prior to leaving it.

58.     On July 21, 2020, Plaintiff received a phone call from Mr. Willis, who explained that Defendants had come to the conclusion that Plaintiff was responsible for the prank.  Plaintiff was then told that she was being terminated only a few days after returning from a leave.  On the other hand, the male employee who used the women's restroom contrary to Defendants' policies was merely given a verbal warning.

59.     Plaintiff vehemently denied the allegation that she was involved in the vandalization of the bathroom.  On July 22, 2020, Plaintiff filed Grievance No. 072220-DS for unjustified termination.

60.     After Plaintiff's employment ended, an unknown employee also vandalized an employee bathroom at the plant where Plaintiff had been employed in approximately October 2020.  Feces was spread across the bathroom.  Defendants conducted no investigation into this matter and no disciplinary was taken.

61.     As a proximate cause of her termination, Plaintiff suffered damages in the form of lost wages and benefits, emotional distress and anguish, and other damages stemming from Defendants' conduct, including attorneys' fees.

**Plaintiff's Exhaustion Of Administrative Remedies**

62.     On July 13, 2020, Plaintiff filed a second Charge of Discrimination at the Illinois Department of Human Rights against her employer for discrimination on the basis of sex, harassment due to her order of protection status, sexual harassment, and retaliation for opposing discrimination (IDHR Charge No. 2020-SF-2583). This complaint was amended on December 2020 to include a complaint for termination in retaliation due to order of protected status,

12

termination due to her sex, termination in retaliation for having opposed retaliation, and termination due to her disability.

63.    On February 2, 2021, Plaintiff filed a Voluntary Withdrawal Request Form for EEOC Charges Nos. 21BA10307 and 2021FS0825.

64.    On June 7, 2021,Plaintiff received her Notice of Right to Sue or Dismissal and Notice letter dated April 26, 2021 for EEOC Charges nos. 21B-2020-01419 and 21B-2021-00307.

65.    Plaintiff has exhausted or will exhaust all administrative prerequisites to pursuing her claims under the Illinois Human Rights Act, Title VII, and the Americans with Disabilities Act.

**COUNT 1: ILLINOIS HUMAN RIGHTS ACT**
**SEXUAL HARASSMENT AND SEX, GENDER, AND DISABILITY DISCRIMINATION AND HARASSMENT**

66.    Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count 1 of this Complaint.

67.    The Illinois Human Rights Act (IHRA) prohibits an employer from engaging in sexual harassment and discriminating against an employee with respect to discipline, privileges or conditions of employment on the basis of sex, gender, and disability.

68.    Defendants perpetrated the sexual harassment against Plaintiff.

69.    Defendants subjected Plaintiff to a harassing, hostile working environment as a result of discrimination and sexual harassment.

70.    Defendants discriminated against Plaintiff on the basis of her sex, gender, and disability.

71.     The harassment Plaintiff experienced was severe and pervasive enough to affect terms of her employment.

72.     Defendants were aware of the unlawful harassment and failed to take steps to end it.

73.     By reason of the foregoing, Defendants violated 775 ILCS 5/1 *et seq.*

74.     Plaintiff has been damaged by Defendants' conduct.

75.     Plaintiff seeks the relief set forth below.

## COUNT 2: ILLINOIS HUMAN RIGHTS ACT
## RETALIATION

76.     Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count 2 of this Complaint.

77.     The Illinois Human Rights Act prohibits an employer from retaliating against an employee because she opposed unlawful discrimination or participated in a state or local fair employment practices agency proceeding ("protected activities").

78.     Defendants retaliated against Plaintiff because she engaged in protected activities.

79.     By reason of the foregoing, Defendants violated 775 ILCS 5/1 *et seq.*

80.     Plaintiff has been damaged by Defendants' conduct.

81.     Plaintiff seeks the relief set forth below.

## COUNT 3: TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## SEX AND GENDER DISCRIMINATION AND HARASSMENT

82.      Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count 3 of this Complaint.

83.     Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits an employer from harassing or discriminating against an employee with respect to discipline, privileges or conditions of employment on the basis of sex or gender.

84.     Defendants perpetrated the sexual and gender based harassment against Plaintiff.

85.     Defendants subjected Plaintiff to a harassing, hostile working environment as a result of discrimination and harassment based on gender and/or sex.

86.     Defendants discriminated against Plaintiff on the basis of her sex and gender.

87.     The harassment Plaintiff experienced was severe and pervasive enough to affect terms of her employment.

88.     Defendants were aware of the unlawful harassment and failed to take steps to end it.

89.     By reason of the foregoing, Defendants violated 42 U.S.C. §§2000e-1 *et seq.*

90.     Plaintiff has been damaged by Defendants' conduct.

## COUNT 4: TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 RETALIATION

91.     Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count 4 of this Complaint.

92.     Title VII prohibits an employer from retaliating against an employee because she opposed unlawful discrimination or participated in a federal, state or local fair employment practices agency proceeding ("protected activities"). Defendants retaliated against Plaintiff because Plaintiff engaged in protected activities.

93.     By reason of the foregoing, Defendants violated 42 U.S.C. §§2000e-1 *et seq.*

94.     Plaintiff has been damaged by Defendants' conduct.

95.     Plaintiff seeks the relief set forth below.

## COUNT 5: AMERICANS WITH DISABILITIES ACT
## FAILURE TO ACCOMMODATE & DISABILITY DISCRIMINATION

96.     Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count 7 of this Complaint.

97.     The Americans with Disabilities Act ("ADA") prohibits an employer from discriminating against on individual on the basis of that individual's disability (as defined by law) and requires that employers provide reasonable accommodations for an employee's disability to allow the employee to continue working, unless doing so would impose an undue hardship.

98.     Through their conduct alleged herein, Defendants failed to conduct a reasonable and good faith dialogue with Plaintiff about accommodations required by her medical conditions, which constituted disability under applicable law.

99.     Additionally, Defendants discriminated against Plaintiff because of her disability.

100.    By reason of the forgoing, Defendants violated the ADA.

101.    Plaintiff has been damaged by Defendants' conduct.

102.    Plaintiff seeks the relief set forth below.

## COUNT 6: AMERICANS WITH DISABILITIES ACT
## RETALIATION

103.    Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count 7 of this Complaint.

104.    The ADA prohibits an employer from retaliating against an employee because she has requested an accommodation for a disability or opposed disability discrimination ("protected activities").

16

105.    Defendants retaliated against Plaintiff because Plaintiff engaged in protected activities.

106.    By reason of the forgoing, Defendants violated the ADA.

107.    Plaintiff has been damaged by Defendants' conduct.

108.    Plaintiff seeks the relief set forth below.

## COUNT 7: FAMILY AND MEDICAL LEAVE ACT
## INTERFERENCE & RETALIATION

109.    Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count 7 of this Complaint.

110.    Plaintiff was an eligible employee under the FMLA and each Defendant was an employer subject to the FMLA.

111.    Plaintiff engaged in an activity protected by the FMLA.

112.    Defendants took an adverse action against Plaintiff, and there was a causal connection between the protected activity and the adverse employment action.

113.    By reason of the foregoing, Defendant has violated 29 U.S.C. § 2601 *et seq*.

114.    Plaintiff has been damaged by Defendants' conduct.

115.    Plaintiff requests the relief set forth below.

## COUNT 8: ILLINOIS WHISTLEBLOWER ACT

116.    Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count 8 of this Complaint.

117.    The Illinois Whistleblower Act prohibits employers from retaliating against an employee for disclosing information to a government agency that the employee reasonably believes discloses a violation of a state or federal law, rule or regulation. 740 ILCS 174/15(b).

118.     The Illinois Whistleblower Act prohibits employers from retaliating against an employee for refusing to participate in an activity that would result in a violation of a state or federal law, rule, or regulation. 740 ILCS 174/20.

119.     Through the conduct alleged herein, Plaintiff disclosed information to a government agency she reasonably believed was a violation of law state or federal laws, rules or regulations, including sections 820 ILCS 180/20(f)(1)(B) and 820 ILCS 180/30 of the Victims' Economic Security and Safety Act (VESSA), Section 11(c) of the Occupational Safety and Health Act (OSHA), 29 U.S.C. §660, and Illinois criminal laws among other laws and regulations.

120.     Through the conduct alleged herein, Plaintiff refused to participate in an activity that she believed would result in a violation of a state or federal law, rule or regulation.

121.     Defendants threatened retaliation and retaliated against Plaintiff because protected activities under the Illinois Whistleblower Act. 740 ILCS 174/20.1, 174/20.2.

122.     Plaintiff has been damaged by Defendants' conduct.

123.     Plaintiff seeks the relief requested below.

### COUNT 9: ILLINOIS COMMON LAW RETALIATORY DISCHARGE

124.     Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count 9 of this Complaint

125.     Plaintiff believed Defendants violated numerous state and federal statutory and regulatory obligations and reported her concerns to Defendant.

126.     Plaintiff suffered a workplace injury and intended to seek benefits for it under regulations and procedures established pursuant to the Illinois Workplace Compensation Act.

127.     Illinois public policy recognizes individuals should not be victims of domestic violence and that those who are deserve protection from unexpected economic harm and retribution, including from their employers.  In addition to expressing this public policy through the criminal code addressing domestic violence, the Victims' Economic Security and Safety Act (VESSA) states that "(25) Employees, including individuals participating in welfare to work programs, may need to take time during business hours to: (A) obtain orders of protection or civil no contact orders; (B) seek medical or legal assistance, counseling, or other services, or (C) look for housing in order to escape from domestic or sexual violence." 820 ILCS 180/5(25).  The state regulation regarding VESSA leaves recognizes that employees who have been victims of domestic violence, dating violence, sexual assault, or stalking too often suffer adverse consequences in the workplace as a result of their victimization and, therefore, are entitled to job protected leave and other protections. 820 ILCS 180/5.

128.     Illinois public policy recognizes the importance of workers' safety and enforcement of laws designed to protect workers safety, as recognized by the Illinois Workers' Compensation Act, Illinois Occupational Health and Safety Act (for public employees), and acceptance of the federal Occupational Health and Safety Act, including those regarding availability of working lavatories, handling of hot liquids or substances, handling of dangerous chemicals, and other workplace conditions.  *See, e.g., Callahan v. Edgewater Care & Rehab. Ctr., Inc.,* 374 Ill. App. 3d 630, 634-35, 872 N.E.2d 551, 554 (1st Dist. 2007) (noting the Illinois common law provides for a remedy for employees "discharged for reporting illegal activities to a government or law-enforcement agency, … employees discharged for reporting illegal activities to their superiors … and employees discharged for refusing to work under conditions which contravened government-mandated safety codes")(internal citations omitted).

129.     Plaintiff was terminated because she raised these concerns regarding violations of state and federal statutory and regulatory obligations expressing the public policy described herein.

130.     As a proximate cause of her discharge, Plaintiff suffered damages in the form of lost wages and benefits, damages to her professional credibility, emotional distress and anguish, and other damages stemming from Defendants' conduct, including attorneys' fees.

131.     Defendants' conduct was willful, wanton and with actual malice and punitive damages are warranted to prevent Defendant and others from engaging in similar conduct.

132.     Plaintiff seeks the relief requested below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Deandra Snyder respectfully requests that the Court find against Defendant as follows:

a)     Declare that Defendant violated the federal and state statutes identified in the Counts set forth above and discharged Plaintiff unlawfully and order here reinstated with all rights and benefits, including seniority status, as though she had remained employed through the date of judgment (with or without accommodations, as necessary);

b)     Award Plaintiff lost past and future wages and benefits, compensatory damages, liquidated damages, punitive damages, reasonable attorneys' fees and costs, pre-judgment and post-judgment interest, statutory penalties, nominal damages, and any other relief available under applicable law;

c)     Award Plaintiff other monetary and non-monetary damages incurred by Plaintiff and available to her under applicable law as a result of Defendants' unlawful conduct;

d)      Award Plaintiff's reasonable attorneys' fees, litigation costs, and expert witness fees; and

e)      Grant all other relief that the Court may deem equitable, just or appropriate that is available under applicable law.

## JURY DEMAND

Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,
DEANDRA SNYDER

/s/ J. Bryan Wood
One of Plaintiff's Attorneys

Date:  Augsut 24, 2021

J. Bryan Wood (ARDC No. 6270845)
The Wood Law Office, LLC
303 W. Madison Street, Suite 2650
Chicago, Illinois 60606
Telephone: (312) 554-8600
Email: bryan@jbryanwoodlaw.com

Terri Blanchard (ARDC No. 6211462)
The Blanchard Law Group, P.C.
16148 Kedzie Avenue
Markham, Illinois 60428
Tel: (815) 260-5653
Email: tblanchard@blanchardlawgroup.com